Citation Nr: 1749180 
Decision Date: 10/31/17 Archive Date: 11/06/17

DOCKET NO. 13-22 452 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Milwaukee, Wisconsin


THE ISSUES

1. Entitlement to a rating higher than 70 percent for posttraumatic stress disorder (PTSD) with alcohol abuse from September 28, 2010.

2. Entitlement to a total rating based upon individual unemployability due to service-connected disability (TDIU) prior to September 28, 2010.


REPRESENTATION

Appellant represented by: Larry D. Schuh, Attorney


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

D. J. Drucker, Counsel


INTRODUCTION

The Veteran had active military service from July 1980 to November 1981.

This case initially came to the Board of Veterans' Appeals (Board) on appeal from rating decisions of a Department of Veterans Affairs (VA) Regional Office (RO).

In April 2016, the Veteran testified during a hearing before the undersigned Veterans Law Judge that was conducted by videoconference. A transcript of the hearing is of record.

In the Introduction to its October 2016 decision, the Board detailed its reasons for considering the Veteran's claim as an initial rating appeal that stemmed from a November 2009 claim. The Board denied an initial rating for PTSD with alcohol abuse higher than 30 percent prior to September 28, 2010. At that time, the Board remanded the matters of a rating higher than 50 percent for PTSD from September 28, 2010, and entitlement to a TDIU, to the Agency of Original Jurisdiction (AOJ) for further development.

A December 2016 rating decision granted a 70 percent rating and TDIU from September 28, 2010. Thus, the matter of entitlement to a rating higher than 70 percent for PTSD from September 28, 2010, and a TDIU prior to that date, remain on appeal. See Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009) (a TDIU, when raised, is part and parcel of the initial rating).

The issue of entitlement to a TDIU prior to September 28, 2010 is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.


FINDING OF FACT

The weight of the medical and lay evidence is against a finding that PTSD with alcohol abuse has effectively resulted in total social and occupational impairment since September 28, 2010.


CONCLUSION OF LAW

The criteria for a rating higher than 70 percent for PTSD with alcohol abuse since September 28, 2010, have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.125, 4.130, Diagnostic Code 9411 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duty to Notify and Assist

The appeal as to the Veteran's claim regarding PTSD arises from disagreement with the initial rating following the grant of service connection. Once service connection is granted the claim is substantiated, additional VCAA notice is not required; and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007).

VA has done everything reasonably possible to assist the Veteran with respect to his claim for benefits in accordance with 38 U.S.C.A. § 5103A and 38 C.F.R.§ 3.159 (c). His service treatment records were obtained. All reasonably identified and available VA and non-VA medical records have been secured. 

Since September 28, 2010, the Veteran underwent VA examinations in December 2010 and February and April 2013, and the examination reports are of record.

The purpose of the Board's October 2016 remand was to obtain VA medical records since May 2014. There has been substantial compliance with this remand, as VA medical records, dated from May 2014 to December 2016, were obtained, and the Veteran was scheduled for VA examination in December 2016.

The December 2016 VA examiner indicated that "t]he Veteran had one brief hospitalization since the [the April 2013 VA examination] for alcohol detoxification in August 2015 followed by a stay in the VA Milwaukee domiciliary rehabilitation program for a few months. See 12/8/16 VBMS C&P Exam, page 3. There are no VA medical records in the file that discuss the Veteran's August 2015 detoxification treatment. Given that this is the only reference to such treatment, and that there are records of such inpatient treatment in August and September 2013 (see 12/7/13 VBMS CAPRI, pages 23-164) and that the Board obtained records of the Veteran's 2015 outpatient mental health treatment (see 11/8/16 VBMS CAPRI), the Board concludes that all relevant medical records were obtained and any reference to his 2015 hospitalization was in error.

There is no indication that the Veteran's claimed PTSD disability has worsened since the last related VA examination. As such, the Board finds that there is no basis to obtain a more current examination in this case. See Palczewski v. Nicholson, 21 Vet. App. 174, 181-83 (2007) (stating that the mere passage of time not a basis for requiring of new examination).

There is no evidence or argument that there is additional notice or assistance that would be reasonably likely to further substantiate the claim. As such, the Board finds the duties to notify and assist have been met.

II. Facts and Analysis

Legal Criteria

Disability ratings are determined by the application of a schedule of ratings which is based, as far as can practically be determined, on the average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2016). Each service-connected disability is rated on the basis of specific criteria identified by Diagnostic Codes. 38 C.F.R. § 4.27 (2016).

Where the question for consideration is propriety of the initial rating "staged ratings" that contemplate variations in the disability since the effective date of service connection are for consideration. Fenderson v. West, 12 Vet. App. 119, 126 (1999). 

VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Where there is a question as to which of two ratings is to be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2016).

In view of the number of atypical instances it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom, and above all, coordination of rating with impairment of function will, however, be expected in all instances. 38 C.F.R. § 4.21 (2016).

The General Rating Formula for Mental Disorders, including Diagnostic Code 9411, that pertains to PTSD, at 38 C.F.R. § 4.130, provides a 100 percent rating for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent ability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name.

Global Assessment of Functioning (GAF) scores are a scale reflecting the "psychological, social and occupational functioning on a hypothetical continuum of mental health- illness." See Carpenter v. Brown , 8 Vet. App. 240, 242 (1995); see also Richard v. Brown, 9 Vet. App. 266, 267 (1996) (citing the American Psychiatric Association 's Diagnostic and Statistical Manual for Mental Disorders, Fourth Edition (DSM IV), page 32). VA implemented DSM-V, effective August 4, 2014. The Secretary of VA determined, however, that DSM-V does not apply to claims certified to the Board prior to August 4, 2014, as in this case. See 79 Fed. Reg. 45,093, 45,094 (Aug. 4, 2014).

A GAF score of 21 to 30 indicates behavior considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation), or an inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).

A GAF score of 31 to 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work). 

A GAF score of 41 to 50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF score of 41 to 50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). 

A GAF score of 51 to 60 indicates moderate symptoms (e.g., a flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). A GAF score of 61 to 70 indicates an assessment of some mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning. A GAF score of 71 to 80 indicates that, if symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); with no more than slight social or occupational functioning (e.g., temporarily falling behind in schoolwork).

The GAF score is not conclusive of the degree of impairment for VA purposes but, rather, must be considered together with all pertinent evidence of record. 
See 38 C.F.R. § 4.126 (2016).

When it is not possible to separate the effects of a non-service-connected condition from those of a service-connected disorder, reasonable doubt should be resolved in the claimant's favor with regard to the question of whether certain signs and symptoms can be attributed to the service-connected disability. See Mittleider v. West, 11 Vet. App. 181, 182 (1998); see also 38 C.F.R. § 3.102 (2015); Mauerhan v. Principi, 16 Vet. App. 436 (2002) (stating that the factors listed in the rating formula are examples of conditions that warrant a particular rating and are used to help differentiate between the different evaluation levels).

Analysis

The assigned GAF scores have been primarily indicative of mild to moderate to disability, and ranged from 52 assigned by a VA examiner in December 2010, commensurate with moderate impairment, to 75 assigned by a VA psychiatrist April 2013, indicative of transient impairment, see 5/10/13 VBMS Medical Treatment Record Government Facility, with one notable exception. On August 6, 2013, a VA social worker assigned a score of "30/100" when the Veteran was evaluated for admission to a detoxification program, indicative of an inability to function in almost all areas although, on August 14, 2013, another social worker assigned a GAF score of 55, commensurate with moderate impairment. See 12/7/13 VBMS CAPRI, pages 82, 121. The Board notes that a temporary evaluation of 100 percent was assigned from August 5 to September 30, 2013 because of the Veteran's hospitalization.

The primary consideration is the overall level of impairment, as due to any symptoms. 

The record does not show that, since September 28, 2010, the Veteran has had total occupational and social impairment as is contemplated in the criteria for a 100 percent rating (exclusive of his August to September 2013 hospitalization). 

Regarding some of the example symptoms listed in the 100 percent criteria, the December 2010, February and April 2013, and December 2016 VA examiners, and the Veteran's clinical psychologist and psychiatrist, all reported that he was properly oriented. See 12/12/16 VBMS CAPRI, pp. 1, 9; 11/8/16 VBMS CAPRI, pp. 30, 39, 46, 56, 61, 95, 98, 134; 5/19/11 VBMS Medical Treatment Record Government Facility, pp. 17, 19. 

In January 2011, the Veteran incurred a seventh driving under the influence charge for which he was incarcerated with a three year sentence, but completed the requirements for an early release program; Department of Corrections psychiatric evaluations in July and September 2011 show that he was alert and oriented, and he was released in June 2012. See 3/7/13 VBMS Medical Treatment Records Furnished by SSA, pages 35, 51, 53; 8/15/12 VBMS VA 27-0820e Report of Incarceration; 3/20/12 VBMS Third Party Correspondence; 12/20/11 VBMS VA 21-4138 Statement in Support of Claim; 12/7/11 VBMS Correspondence; 11/8/11 VBMS VA 21-4138 Statement in Support of Claim; 8/26/11 VBMS VA 21-4138 Statement in Support of Claim; 8/15/11 VBMS Medical Treatment Record Government Facility; 8/9/11 VBMS VA 27-0820e Report of Incarceration; 6/13/11 VBMS Court Documents-General; 5/24/11 VBMS Court Documents-General. 

A November 2011 Social Security Administration (SSA) psychiatric evaluation similarly shows that the Veteran was fully oriented. See 3/7/13 VBMS Medical Treatment Records Furnished by SSA. Gross impairment in thought processes or communications, delusion or hallucinations, or grossly inappropriate behavior, have not been documented in the clinical record or in the statements from the Veteran. The examiners found no evidence of auditory or visual hallucinations or delusions or psychotic thought. 

The Veteran's thought processes were logical and coherent. His speech was clear and he repeatedly denied having homicidal ideations or plans. The December 2016 VA examiner noted occasional panic attacks more than once a week. 

The Veteran has also not had symptoms of similar severity, frequency and duration as those listed in the criteria for a 100 percent rating. The Veteran lived with his mother, with whom he has a good relationship, and has a good relationship with a brother with whom he periodically worked in the brother's auto repair garage. He had a truck driver friend with whom he spent time, and another friend whom he helped with sandblasting. See 11/8/16 VBMS CAPRI, pp. 39, 46, 51, 56, 60, 63, 65, 95, 104, 1106, 134; 7/16/13 VBMS VA 9 Appeal to Board of Appeals, page 3. The Veteran's relationship with his girlfriend of eight years ended, as he could not "put up with her" any longer, according to the December 2016 VA examination report at page 2. He has one adult child, a daughter, with whom he has an off and on again relationship and indicated he had not really been in her life but hoped to do better in the future. Id.; see also 7/16/13 VBMS VA 9 Appeal to Board of Appeals, page 3. The Board finds that these examples show some social capacity and not total social impairment.

The record contains references to passive suicidal ideation without plan or intent including on December 29, 2010, when the Veteran denied active suicidal ideation, intent, or plan, but told a psychologist that every few days he had thoughts about dying or that he would be better off dead although, when seen on January 21, 2011, the psychologist found no passive suicidal ideation. See 5/19/11 VBMS Medical Treatment Record Government Facility, pages 19, 28. Passive suicidal ideation was also noted on August 6, 2013, when the Veteran sought detoxification treatment, and the next day a loose suicide ideation but with no intention or plan, was reported. See 12/7/13 VBMS CAPRI, pages 104, 126. Subsequent outpatient mental health clinicians and the 2016 examiner all found no evidence of suicidal ideation. See 2/27/14 VBMS CAPRI, pages 5-6, 15-16; 5/29/14 VBMS CAPRI, pages 1,6, 8-11; 12/12/16 VBMS CAPRI, 9; 11/8/16 VBMS CAPRI, pages 30, 40, 46, 50, 56, 60, 63 94, 107, 118.

Given the above, the level of impairment shown is not commensurate with total occupational and social impairment due to PTSD. Despite having some symptoms noted under the 100 percent criteria, the record, as detailed above, notes some interpersonal relationships. Moreover, while some symptoms are indeed very serious, such as suicidal ideation, in this case such symptoms have not been shown to have resulted in total social impairment. Rather, the disability picture most nearly approximates the 70 percent evaluation presently assigned. The Board concludes that the weight of the probative medical and lay evidence is against a rating higher than 70 percent for PTSD with alcohol abuse from September 8, 2010. Moreover, the evidence is not so evenly balanced as to allow for the application of reasonable doubt. 38 U.S.C.A. 5107(b) West 2014); 38 C.F.R. §§ 4.7, 4.21 (2016).

In reaching this determination, the Board recognizes that the SSA found the Veteran totally disabled since June 2012. See 3/7/13 VBMS Medical Treatment Records Furnished by SSA, pages 2, 7. However, the SSA records show that his disability award was based primarily on non-service-connected discogenic and degenerative back disorders and, secondarily, on affective/mood disorders. SSA's favorable determination, although probative evidence to be considered in the claim with VA, is not dispositive or altogether binding on VA since the agencies have different disability determination requirements. See Collier v Derwinski, 1 Vet App 413 417 (1991) (VA is not bound by the findings of disability and/or unemployability made by other agencies, including SSA). The Veteran's award of a TDIU is recognition, in and of itself, of his inability to work due to his service-connected PTSD disability.

Neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366, 369 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).




ORDER

Entitlement to a rating higher than 70 percent for PTSD with alcohol abuse from September 28, 2010 is denied.


REMAND

In his February 2013 TDIU claims, the Veteran variously reported that he last worked full time in 1990 and 2009 and was unable to work due to his PTSD disability. See 2/25/13 VBMS VA 21-8940 Veterans Application for Increased Compensation Based on Unemployability.

The Veteran does not meet the percentage requirements for a TDIU prior to September 28, 2010, but VA policy is to grant that benefit in all cases where service connected disabilities prevent a veteran from engaging in gainful employment consistent with his or her education and occupational experience. 38 C.F.R. § 4.16 (a), (b) (2016). The Board cannot grant TDIU in the first instance where a veteran fails to meet the percentage requirements, but must first insure that the claim is referred to VA's Director of Compensation Service for initial consideration. Bowling v. Principi, 15 Vet. App. 1 (2001).

Accordingly, the case is REMANDED for the following action:

1. Refer the Veteran's claim of entitlement to a TDIU prior to September 28, 2010 to VA's Director of Compensation Service for adjudication in accordance with 38 C.F.R. § 4.16 (b).

2. If any benefit on appeal remains denied, issue a supplemental statement of the case regarding consideration of TDIU prior to September 28, 2010, if that benefit has been denied. Then return the case to the Board, if in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

 

______________________________________________
ERIC S. LEBOFF
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs